No. 19,429.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, ET AL. *v.* THE INDUSTRIAL COMMISSION OF COLORADO, ET AL.

(357 P. [2d] 929)

Decided December 19, 1960.

Messrs. LEE, SHIVERS & BANTA, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for de-fendant in error The Industrial Commission of Colorado.

Mr. RICHARD L. CASEY, for defendants in error Mary Iacovetta and Lucille Iacovetta.

*In Department.*

PER CURIAM.

PLAINTIFFS in error seek reversal of an award of the Industrial Commission favorable to defendants in error, Mary Iacovetta and Lucille Iacovetta, claiming as the widow and daughter of Bartolomeo Iacovetta, alleged to have died as result of an industrial accident occurring on the night of January 1 or the early morning of January 2, 1959, while employed by plaintiff in error, General Paint Corporation.

The evidence upon which the commission made its award established that Bartolomeo Iacovetta, 63 years of age, and a native of Italy, was employed as night watchman for the employer at its pipe-coating plant. The plant consisted of a five to six acre tract on which

were located an office building, an employee's wash-room, and a maintenance building; thirteen large kettles situated on various parts of the premises in which tar was kept, heated and used to coat pipes; and supplies of heavy pipes stored about the area.

Iacovetta had been employed as night watchman by General Paint and its predecessor for ten years. He was alone on duty at night from 9:30 p.m. to 6:30 a.m. His work consisted of watching the premises to see that they were not disturbed, occasionally walking through the area and buildings, and emptying trash in outdoor in-cinerators. On nights preceding working days he was directed to light fires under designated kettles at about 3 a.m., to heat tar for use during the day. This required climbing up short ladders. He also cleaned the wash-room although this was not a part of his assigned work.

January 1 through 4, 1959, were vacation days and the plant was not expected to be in operation. Iacovetta usually walked to work. The night of January 1, 1959, was zero cold and there was snow on the ground. There is no evidence as to what his condition was at the time he went to work but he punched the time clock at 8:58 p.m. Sometime in the middle or late morning of January 2, 1959, one of employer's workmen, having returned to the plant, found Mr. Iacovetta on the floor of the wash-room about ten feet from the outside door, six feet from the time clock, and close to a heater located near the center of the building. He was wearing his overcoat, though the temperature in this building was 67 to 70 degrees, and was lying on the floor which was dirty with toilet paper and hand cleanser. His overcoat was wet and soggy, and he was in pain. Upon being asked what had happened, his only reply was that he had slipped on the ice. There was no evidence as to when or where this fall occurred. There was conflict as to whether the rea-son for not asking details relative to the accident was his painful condition. He was taken to the hospital where it was discovered that he had suffered a fracture

of his leg near the hip joint. Complications resulting from his being confined to bed and surgery required by the fracture, resulted in his death about two weeks later.

Mary Iacovetta, who does not speak or understand English very well, testified that she and decedent married in Italy in 1920 and had as issue eight children, all of whom were of age and emancipated except the claimant daughter, Lucille Iacovetta, a cerebral palsy victim, who requires constant care.

Since 1943 Mary and decedent had occasionally lived separate and apart. Decedent was a heavy drinker and Mary had difficulty in getting enough money from him to support herself and Lucille. In 1955 trouble developed between them occasioned by decedent's desire to send money to a brother in Italy, and resulted in Mary instituting an action for separate maintenance. This was later changed to divorce in which Mary obtained an interlocutory decree on February 13, 1957, at which time the parties were living apart. The decree provided for monthly support payments to Mary of $62.50.

In June 1957 decedent became ill and returned to the family home, the title of which still remained in him. As had been customary for a number of years, decedent slept in one room while Mary slept in an adjoining room with the invalid daughter Lucille.

A final decree of divorce was entered in the divorce action in August 1957. Decedent remained at the family house until June 1958 when he moved to a separate apartment on account of the noise occasioned by visits of his grandchildren. He nevertheless brought his laundry home to be done and food was occasionally furnished him from there; his tax statements and mail were directed there, and he made frequent visits there. He retained title to the house.

Mary testified that she considered the divorce as having been abandoned when decedent returned home in June 1957, and that she intended to remain married. A neighbor stated that she thought decedent and Mary

were still man and wife. Due to the necessity of caring for Lucille it had not been customary for Mary and decedent to go out together for a number of years. This routine was no different after the action for divorce. The only income Mary and Lucille had was the monthly amount decedent provided, and the comparatively small sums which Mary made by sewing for the sisters at St. Vincents Home, an orphanage. In 1957 she made $275.00 and in 1958 $450.00.

The employer's accident report to the commission indicated the injury occurred in the course of employment and that Mr. Iacovetta was married.

The commission found that Bartolomeo Iacovetta was injured on January 2, 1959, in an accident which arose out of and in the course of his employment and which resulted in his death; and that Mary and Lucille Iacovetta were the sole dependents and entitled to compensation.

Plaintiffs in error contend the evidence was insufficient to sustain the commission's findings and that they were based on speculation, conjecture and unwarranted inferences. *Deines Brothers v. Industrial Commission,* 125 Colo. 258, 242 P. (2d) 600. They call attention to the rule in *Industrial Commission, et al. v. London & Lancashire Indemnity Company, et al.,* 135 Colo. 372, 311 P. (2d) 705, which holds: "There is nothing in the Colorado Workmen's Compensation Act which creates a statutory presumption of accident in unwitnessed events which result in injury or death of a workman."

The London case, however, differs from the present case in that it was dealing with an employee found off his employer's property and involving the possibility of suicide.

Here we have an employee who reported for work at the appointed time; was found within a building on the employer's property where he was supposed to be during working hours; he suffered an injury, which from the evidence may reasonably have been caused by slipping

and falling on ice and was evidently so painful that he did not remove his overcoat; that there was snow and ice on the employer's property; and the weather was very cold.

The fact that an accident is not witnessed does not preclude proof by circumstantial evidence as in other cases. In *Industrial Commission of Colorado v. Havens,* 136 Colo. 111, 314 P. (2d) 698, we held that while the burden of proof is on claimants in Workmen's Compensation cases, the corollary follows that "awards cannot be denied as the result of speculation or conjecture, * * *." If this were not so, an unattended injury or death in many cases would not be compensated.

The employer's report of the accident contains admissions as to the place and cause of the injury and the employee's marital status. These the commission could consider. *Industrial Commission of Colorado v. Johnson Pontiac, Inc.,* 140 Colo. 160, 344 P. (2d) 186.

We deem the evidence, together with the reasonable inferences to be drawn therefrom, sufficient to show that the injury occurred while decedent was performing services arising out of and in the course of his employment.

The finding that Lucille Iacovetta was a surviving daughter and dependent of decedent and entitled to compensation is too plain for comment, and the same can be said of Mary's dependency.

The commission's finding that Mary was the widow of Iacovetta is also supported by the evidence. Here there was evidence that the parties resumed living together both before and after the formal entry of the decree; held themselves out to their family and neighbors as being husband and wife. Evidence of their actions constituted sufficient proof to support the finding that they were husband and wife. See *Employer's Insurance Co. v. Morgulski,* 69 Colo. 223, 193 Pac. 725; see also *Jordan v. Jordan,* 105 Colo. 171, 96 P. (2d) 13.

There was ample support for the commission's find-

ings and orders, and the court did not err in affirming the award.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON, MR. JUSTICE HALL and MR. JUSTICE DOYLE concur.